**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 30, 2019**

# In the Court of Appeals of Georgia

A19A1347. J. MICHAEL VINCE, LLC v. SUNTRUST BANK.        95-044

PHIPPS, Senior Appellate Judge.

This is the second appearance of this case before this Court. In *SunTrust Bank v. Cowan*, 344 Ga. App. 604 (812 SE2d 13) (2018), we reversed the trial court's award of excess funds from a tax sale to J. Michael Vince, LLC ("JMV") because of the Supreme Court of Georgia's holding in *DLT List, LLC v. M7VEN Supportive Housing & Dev. Group*, 301 Ga. 131 (800 SE2d 362) (2017) ("*DLT List II*")[1] that a redeeming creditor at a tax sale (such as JMV) does not have a first priority lien interest in the excess funds. After remand, the trial court found JMV in contempt of

---

[1] In *DLT List II*, the Supreme Court affirmed this Court's opinion in *DLT List, LLC v. M7VEN Supportive Housing & Dev. Group*, 335 Ga. App. 318 (779 SE2d 436) (2015) ("*DLT List I*") under different rationale.

an order entered prior to the order we reversed. For the reasons that follow, we affirm in part, reverse in part, vacate in part, and remand with direction.

The relevant procedural history and facts of this case are as follows. On October 12, 2011, Regina Jordan ("Jordan") executed a security deed in favor of SunTrust Bank ("SunTrust") in the amount of $246,535.26 on the real property located at 1000 Landon Drive, Villa Rica, Georgia (the "Property"). In March 2015, Douglas County conducted a tax sale of the Property. After the tax sale, a homeowners' association lien on the Property was assigned to JMV in April 2015, and JMV redeemed the Property by paying the tax sale purchaser $198,000.00. The Douglas County Tax Commissioner filed an interpleader action in the Superior Court of Douglas County stating that the Property sold for "$165,000.00, leaving excess funds in the amount of $152,232.58" and deposited the excess funds into the trial court's registry. SunTrust and JMV filed answers to the interpleader seeking the excess funds and claiming first priority lienholder status.

In October 2015, the trial court entered an order awarding the Douglas County Tax Commissioner $1,240.00 in attorney fees and the remaining excess funds totaling $150,992.58 to JMV (the "October 2015 Order"), but it later vacated the award because neither JMV nor the trial court provided notice of the order to SunTrust.

2

Thereafter, SunTrust moved to compel JMV to return the excess funds to the trial court's registry, and on September 26, 2016, the trial court entered an omnibus order on several pending motions (the "September 2016 Order"). In pertinent part, the trial court ordered JMV to pay the excess funds into the trial court's registry or post a bond within 30 days. JMV did not deposit the funds or post a bond. Instead, JMV moved for the dismissal, or alternatively, the reinstatement of the October 2015 Order, and on March 20, 2017, the trial court reinstated the October 2015 Order, awarding the excess funds to JMV (the "March 2017 Order"). SunTrust appealed, and we reversed the trial court's order, remanding the case for further consideration in light of the holdings in *DLT List I* and *DLT List II*. See *SunTrust Bank*, 344 Ga. App. at 607.

After remand, in May 2018, SunTrust filed a motion for contempt, arguing that JMV "ignored [the trial court's September 2016 Order] compelling payment of the [e]xcess [f]unds into [c]ourt or post a bond." JMV responded that the September 2016 Order was a nullity and that SunTrust lacked standing as a party to the interpleader action because the security deed executed by Jordan was improperly attested, leaving

3

SunTrust without a record interest in the Property,[2] and the trial court held a hearing where JMV made the additional argument that JMV could not comply with the order because it had already spent the money. The trial court found JMV in wilful contempt of the September 2016 Order. It ordered JMV to pay $150,992.58 into the court's registry within 30 days and found that "JMV should be sanctioned or punished for its past acts," and as "a means to coerce compliance with a prior court order, pursuant to this Court's contempt authority," it ordered JMV to "pay to SunTrust through its undersigned counsel a fine and/or reasonable attorneys' fees and expenses in the amount of $5,000.00 for the costs to SunTrust of preparing and prosecuting the [m]otion for [c]ontempt[.]" This appeal followed.[3]

1. JMV argues that SunTrust lacked standing to participate in the interpleader action and to move for contempt against JMV because SunTrust's security deed "was not a valid (or even facially valid) instrument of record at the time of the Tax Sale[.]" We disagree.

---

[2] JMV also argued that according to *DLT List II*, SunTrust, as a holder of a security deed, has an interest in real property, not excess funds. But it did not raise this argument on appeal.

[3] The trial court later entered an order awarding the excess funds to SunTrust, and JMV's appeal of that order is pending in this Court.

OCGA § 48-4-5 (a) states:

> If there are any excess funds after paying taxes, costs, and all expenses of a sale made by the tax commissioner, tax collector, or sheriff, or other officer holding excess funds, the officer selling the property shall give written notice of such excess funds to the record owner of the property at the time of the tax sale and to the record owner of each security deed affecting the property and to all other parties having any recorded equity interest or claim in such property at the time of the tax sale. Such notice shall be sent by first-class mail within 30 days after the tax sale. The notice shall contain a description of the land sold, the date sold, the name and address of the tax sale purchaser, the total sale price, and the amount of excess funds collected and held by the tax commissioner, tax collector, sheriff, or other officer. The notice shall state that the excess funds are available for distribution to the owner or owners as their interests appear in the order of priority in which their interests exist.

OCGA § 48-4-5 (a).

This statute provides that the officer selling a property at a tax sale must provide written notice of any excess funds after the sale to parties holding record interests in the property. It also provides that the notice shall state that "*the excess funds are available for distribution to the owner or owners as their interests appear in the order of priority in which their interests exist.*" Id. It does not, as JMV argues, prohibit parties with unrecorded security interests from seeking excess funds through

5

an interpleader action. SunTrust, as the grantee of the security deed through Jordan, has an ownership interest in the Property. See *Wallin v. Wallin*, 341 Ga. App. 440, 444 (1) (800 SE2d 617) (2017) (an unrecorded security deed "is nevertheless a valid lien on the property"); *Jackson v. Bank One*, 287 Ga. App. 791, 793 (2) (652 SE2d 849) (2007) (the "grantee of a security deed is under no duty to the grantor to have the deed recorded; as between the original parties, the deed is valid irrespective of whether it is recorded or not") (punctuation omitted.). See generally *Baxter v. Bayview Loan Servicing, LLC*, 301 Ga. App. 577, 578 (1) (a) (688 SE2d 363) (2009) ("Whether a mortgage is in recordable form . . . is different from the question of whether a mortgage exists—i.e., whether a mortgage was created by a particular writing . . . a mortgage is good as between the parties *without any attesting witness* and a mortgage is perfectly valid as between the parties thereto, though never recorded") (emphasis supplied) (citation, punctuation, and footnote omitted), citing *Jackson*, 287 Ga. App. at 793 (2). Thus, SunTrust has an interest in the Property sufficient to seek the excess funds.

2. In several enumerations of error, JMV argues that the trial court erred by finding it in wilful contempt and by sanctioning it in the amount of $5,000. We agree in part.

6

In reviewing contempt cases, we bear in mind that "[t]he question of whether a contempt has occurred is for the trial court, and its determination will be overturned only if there has been a gross abuse of discretion." (citation and punctuation omitted.) *Affatato v. Considine*, 305 Ga. App. 755, 760 (2) (a) (700 SE2d 717) (2010).

(a) JMV asserts that the trial court erred by holding it in contempt of the September 2016 Order because that order was no longer in force because it was "superseded by the [March 2017 Order] before SunTrust moved for contempt sanctions." We disagree.

"The legal effect of the reversal of a judgment on appeal is to nullify the judgment below and place the parties in the same position in which they were before judgment." (Punctuation omitted.) *Franklyn Gesner Fine Paintings, Inc. v. Ketcham*, 259 Ga. 3, 4 (6) (a) (375 SE2d 848) (1989). Prior to the entry of the March 2017 Order, reinstating the trial court's October 2015 Final Order, the trial court ordered JMV to deposit $150,992.58 into the trial court's registry or post an appropriate bond in that amount with the clerk, within 30 days of entry of the September 2016 Order. This Court's reversal of the Final Order, *Suntrust Bank*, 344 Ga. App. at 605, 607, placed JMV in the position it was in prior to the entry of the order, and it was still

7

required to comply with the trial court's September 2016 Order. JMV admits that it did not, and the trial court did not err in finding JMV in contempt.

(b) JMV also argues the trial court erred by finding it in wilful contempt because the record lacks any evidence to support the trial court's conclusion that JMV wilfully refused to deposit the excess funds. We disagree.

"Financial inability to pay is a defense to . . . contempt for violation of an order requiring the payment of funds." (citation omitted.) *Affatato*, 305 Ga. App. at 759 (2); *Hamilton Capital Group v. Equifax Credit Information Svcs.*, 266 Ga. App. 1, 3 (2) (596 SE2d 656) (2004) ("The defenses to both civil and criminal contempt are that . . . the violation was not wilful (e.g., inability to pay or comply)") (citation omitted.) The burden is on the contemnor to prove that it was financially unable to make the ordered payment. *Hamilton Capital Group*, 266 Ga. App. at 4 (2). But, the "[i]nability to pay is a defense only where the contemnor demonstrates that [it] has exhausted all resources and assets available and is still unable to secure the funds necessary to enable compliance with the court's order[,]" and the contemnor "must show clearly that [it] has in good faith exhausted all the resources at [its] command and has made a diligent and bona fide effort to comply with the order of the court, and that [it]

8

cannot borrow sufficient funds to comply with the obligation." (Citations and punctuation omitted.) *Darroch v. Willis*, 286 Ga. 566, 569 (2) (690 SE2d 410) (2010).

Here, JMV has not cited to any evidence in the record that JMV's contempt was not wilful. Although JMV argues that it spent the funds "in the ordinary course of business," JMV has not supported this statement with admissible evidence. JMV has likewise failed to demonstrate that it "exhausted all resources and assets available and is still unable to secure the funds necessary to enable compliance with the court's order[.]" (citation and punctuation omitted.) *Darroch*, 286 Ga. at 569 (2). Given JMV's failure to put forth evidence that it was unable to secure sufficient funds to deposit into the trial court's registry, there was no gross abuse of discretion by the trial court finding it in wilful contempt. *Hamilton Capital Group*, 266 Ga. App. at 4 (2) (conclusory affidavit from company's vice president stating that the company lacked the ability to pay the amount claimed fell "far short of the required showing[,]" where no balance sheets or lists of assets and liabilities were presented, no showing that the company made any effort to borrow money or make partial payments, and where the trial court was authorized to infer that the company "was not in bankruptcy

9

and continuing to operate as a business" and supported the trial court's finding of wilfulness).

(c) In related enumerations of error, JMV argues that the sanction of $5,000 as a fine and/or attorney fees was error. We agree.

"Once an act has been determined to constitute contempt of court, the action the court takes to deal with the contempt determines whether the contempt is deemed 'criminal' contempt or 'civil' contempt." (citations and punctuation omitted.) *Rhone v. Bolden*, 270 Ga. App. 712, 714 (2) (608 SE2d 22) (2004). "The distinction between criminal and civil contempt is that criminal contempt imposes unconditional punishment for prior contempt, to preserve the court's authority and to punish disobedience of its orders. Civil contempt, on the other hand, is conditional punishment which coerces the contemnor to comply with the court order." (Citations and punctuation omitted.) Id.; see also *Rapaport v. Buckhead Coach, Inc.*, 234 Ga. App. 363, 364 (506 SE2d 690) (1998).

In this case, the trial court's language that "JMV should be sanctioned or punished for its past acts, and as a means to coerce compliance with a prior court order" suggests that the trial court's sanctions were both civil and criminal. But the trial court's sanction of requiring that JMV "*shall* pay . . . a fine and/or reasonable

10

attorneys' fees and expenses in the amount of $5,000 for the costs to SunTrust of preparing and prosecuting the [m]otion for [c]ontempt" (emphasis supplied) is unconditional punishment for prior acts of contumacy, not conditional punishment as a means of coercing future compliance with a court order. *Grantham v. Universal Tax Sys., Inc.*, 217 Ga. App. 676, 677 (2) (458 SE2d 870) (1995). Thus, the trial court found JMV in criminal contempt. *Rhone*, 270 Ga. App. at 715 (we consider the substance of the trial court's order when reviewing whether the order held the party in criminal or civil contempt).

Attorney fees are not permissible sanctions for criminal contempt, however, nor are they awardable in conjunction with a citation for criminal contempt. *Rapaport*, 234 Ga. App. at 365 (3). Nonetheless, the trial court was authorized to fine JMV in an amount "not exceeding $1,000.00, by imprisonment not exceeding 20 days, or both[.]" OCGA § 15-6-8 (5). Accordingly, we reverse and vacate the sanction of $5,000.00 as it relates to the award of attorney fees, but remand for the trial court's consideration of whether JMV's actions warrant a fine consistent with this opinion.

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded with direction. McFadden, C.J., and McMillian, P.J., concur.*

11